YELVERTON, J.
This appeal arises from a judgment terminating the parental rights of the Appellant, M.F.L., to her child, G.P.D. The trial court found that M.F.L. failed to substantially comply with the Department of Social Services’ (DSS) case plan established for her, and that there is no reasonable expectation of significant improvement in the near future. Additionally, the trial court ruled that termination of her parental rights was in the best interest of the child. The mother appeals, claiming that the DSS failed to carry its burden of proof. We disagree and affirm the ruling of the trial court.
On October 16, 2000, G.P.D., then nearly three, was removed from the care of his mother and placed in the custody of the DSS after an investigation revealed that the mother was severely neglecting the care, safety, and hygiene of her children.[1] The mother is an admitted prescription drug abuser. G.P.D. was subsequently adjudicated a child in need of care and placed in a foster home. He was two-and-a-half years old at the time. Further investigation revealed that there had been several previous incidents of validated neglect or abuse involving the child. Furthermore, it was soon determined that G.P.D. was developmentally and mentally delayed as a result of this neglect. This caused the child to have difficulty in understanding simple commands, in reacting appropriately in certain situations, and caused the child to develop a speech impediment.
The DSS attempted to work with the mother to reunite her with her child. A case plan was developed in order to reach this goal. The plan included both in-patient and out-patient treatment for her substance abuse problem, parenting classes, and psychological evaluation. The most significant portion of her plan, however, dealt bwith her addictive problem, which was a major reason for the removal of her children. Almost one year passed from the removal of her children before she had completed the required parenting classes. During the same time, the mother had been dismissed from or checked herself out of five in-patient substance abuse programs, without having completed one. On January 25, 2002, the DSS filed for the termination of the mother’s parental *1198 rights.[2] Later, one year and two months after the removal of her children, she finally completed the in-patient program on her sixth attempt. However, she still failed to meet the out-patient aftercare program as required by the DSS.
At the trial on the merits, the trial court found that more than one year had passed since the removal of the child, that there had been no substantial compliance with the case plan as required, and that there was no reasonable expectation of improvement in the mother’s behavior. Noting that the child had improved greatly in his development since being placed in the care of his foster mother, the trial court found that the best interest of the child dictated that the mother’s parental rights be terminated and that the child be freed for adoption. From this decision, the mother appeals.
The fundamental purpose of involuntary termination proceedings is to provide the best possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs by providing a judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. La.Ch.Code art. 1001. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. Id. State ex rel. J.A., 99-2905, pp. 7-8 (La.1/12/00), 752 So.2d 806, 810 (citations omitted), sets forth the following regarding the termination of parental rights:
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.
Title X of the Children’s Code governs the involuntary termination of parental rights. The grounds for the termination of the mother’s parental rights in this case are set forth by Louisiana Children’s Code article 1015(5), which states:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or *1199 conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
In order to sever the parental bond, the DSS must prove that the mother failed to substantially comply with her case plan by clear and convincing evidence. La.Ch. Code art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the minimum standard of proof in termination of parental rights cases is clear and convincing evidence); State ex rel. J.A., 752 So.2d at 810. Not only must the DSS establish that statutory ground for termination, but the trial judge must also find that termination is in the best interest of the child. La.Ch.Code art. 1039.
14“It is well-settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong.” In re A.J.F., 00-948, p. 25 (La.6/30/00), 764 So.2d 47, 61. In its review, “it is important that the appellate court not substitute its opinion when it is the juvenile court who is in the unique position to see and hear the witnesses as they testify.” Id. at 62. “The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” Id.
In the case before us, the record clearly sets forth that the mother failed to substantially comply with the case plan laid out for her. She failed five times to complete her in-patient treatment, accomplishing this goal only after the DSS filed suit to terminate her rights to her child. She had still not completed her out-patient aftercare treatment as of the time of the trial. Even worse, she failed to remain drug-free, testing positive for drugs just prior to the trial. The record reflects that, even though she has complied with some aspects of the plan, the mother has never demonstrated that she has gained anything from her treatment or classes, nor has . she made the improvements necessary to get her child back.
Furthermore, the record supports the conclusion that there is no reasonable expectation of significant improvement from the mother. She was told specifically that she must be drug-free in order to regain custody of her child, yet she continued to take addictive prescription drugs against the advice of her counselors. She openly admitted taking prohibited drugs. Simply put, the evidence shows that her dependency would affect her ability to parent her child and would expose the child to a substantial risk of harm. Despite being told this time and time again, she failed to clean up as required by her plan. Additionally, she failed to attend meetings Irregularly as ordered by the plan. As noted by the trial court in its reasons for judgment, her pattern of behavior is that of failure to comply with the plan. The trial court committed no error in making this finding.
Finally, the trial court was correct in ruling that the child’s best interest requires that the mother’s parental rights be terminated. The best evidence of this is the child’s condition when taken from the care of the mother and his condition now. When taken from his mother, G.P.D. suffered from emotional and developmental problems as a result of the neglect he suffered at the hands of his mother. He was not toilet trained, and he was scared of strangers. He was very apprehensive and feared harm from people within his own family. He had nightmares, some *1200 involving suicide. Neglect and a lack of nurturing had caused him to develop a speech impediment. Now, after being in the care of his foster mother, G.P.D. has developed to a level appropriate for his age. He is relaxed and has become “very well adjusted, very happy.” He has bonded to his foster mother, who not only wants to adopt him, but would also allow the mother to visit with the child if she is allowed to adopt him. His speech has even- improved. The trial court ruled that termination of the mother’s parental rights was in the child’s best interest. The vast improvements the child has made since being removed from his mother’s custody supports this ruling.
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the mother.
AFFIRMED.

. G.P.D. has an older brother who was also removed from the mother’s care. He was placed in permanent foster care and is not involved in this litigation.

. The DSS also filed for the termination of the biological father’s parental rights. He later voluntarily waived his rights to the child.